# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0559V
UNPUBLISHED

| | |
|---|---|
| WANDA RODGERS,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: December 29, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) and Diphtheria, Tetanus, acellular Pertussis (Tdap) Vaccines; Bilateral Shoulder Injuries Related to Vaccine Administration (SIRVAs) |

*Isaiah Richard Kalinowski*, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.

*Mallori Browne Openchowski*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On April 18, 2018, Wanda Rodgers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered shoulder injuries related to vaccine administration ("SIRVAs"), in both right and left shoulders, both meeting the criteria for Table SIRVAs and casually related to the influenza ("flu") and tetanus, diphtheria, acellular pertussis ("Tdap") vaccines she received on September 13, 2016. Petition at ¶¶

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all Section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

3, 14, 17. The case was assigned to the Special Processing Unit of the Office of Special Masters, and although entitlement was decided in Petitioner's favor, the parties could not agree on damages.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$120,658.26**, **representing compensation in the amount of $117,500.00 for actual pain and suffering, plus $3,158.26 for past unreimbursable expenses.**

## I.     Relevant Procedural History

From April through July 2018, Ms. Rodgers filed the affidavit and medical records required under the Vaccine Act. Exhibits 1-5, ECF Nos. 4, 11; *see* Section 11(c). During the remainder of 2018 into 2019, the parties discussed a factual issue regarding the site of vaccination,[3] and Petitioner filed additional documentation and updated medical records. Exhibits 6-8, ECF Nos. 21, 28; Status Reports, ECF Nos. 19, 24, 29; Status Conference held May 23, 2019. On March 11, 2020, I issued a fact ruling, finding the two vaccines Petitioner received had been administered one in each arm, as alleged. ECF No. 36.

During March through August 2020, the parties attempted to reach an informal settlement in the case. *See, e.g.,* Status Report, ECF No. 44. On August 26, 2020, they informed me they had reached an impasse in their settlement discussions. Status Report, ECF No. 45. After the parties briefed entitlement,[4] I issued a ruling finding Petitioner had provided preponderant evidence to establish that she suffered Table SIRVAs in both her right and left shoulders, based on the two covered vaccines she had received. Ruling on Entitlement, issued Sept. 9, 2021, ECF No. 57. In the ruling, I cautioned the parties that in discussing damages they should consider factors such as Petitioner's unrelated pain during this same time, the lower severity of her left shoulder injury in comparison to her right, and the significant relief obtained from steroid injections she received in 2017. I also observed that Petitioner had complained of only right shoulder pain by 2019, and that the record did not appear to support Petitioner's assertions that this later right shoulder was related to her 2016 vaccinations. *Id.* at 16.

Less than two months later, the parties informed me they had reached an impasse in their damages discussions and proposed consecutive briefing dates. Joint Status

---

[3] The vaccine record indicates that Petitioner received both the flu and Tdap vaccines in her left deltoid. Exhibit 1 at 65.

[4] ECF Nos. 51, 55-56. Along with her brief, Petitioner filed medical literature and an additional declaration. Exhibits 12-31, ECF Nos. 49-50, 52.

2

Report, filed Nov. 1, 2021, ECF No. 61. The parties filed their briefs as proposed. ECF Nos. 62-64. The matter is now ripe for adjudication.

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of*

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

*Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III. Prior SIRVA Compensation Within SPU[6]

#### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2021, 2,097 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,036 of these cases, with the remaining 61 cases dismissed.

Of the compensated cases, 1,187 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 69 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[7]

---

[6] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[7] *See, e.g., Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

4

1,092 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 26 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 849 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[8] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *69* | *1,092* | *26* | *849* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $75,000.00 | $70,000.00 | $90,000.00 | $45,000.00 |
| **Median** | **$97,500.00** | **$90,350.00** | **$115,214.49** | **$65,000.00** |
| **3rd Quartile** | $125,360.00 | $119,502.79 | $158,264.36 | $90,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 69 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $95,500.00 as the median amount. Only five of these cases involved

---

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,000.00.[9]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment of 40 days to over six months. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 29 months, with petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering. In the fourth case involving an award of future pain and suffering, the petitioner provided evidence of an ongoing SIRVA expected to resolve within the subsequent year.

### IV.  Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including all

---

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

medical records and affidavits filed, plus the parties' briefs and other pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances of this case.

### A.  The Parties' Arguments

The parties agree Petitioner should be awarded $3,158.26 for her unreimbursed medical expenses. Opening Memorandum of Law Regarding Damages ("Brief") at 1, 15, ECF No. 62; Respondent's Brief on Damages ("Opp.") at 2 n.1, 11; ECF No. 63; Reply Memorandum Regarding Damages ("Reply Brief"), at 9, ECF No. 64. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for Petitioner's pain and suffering.

Emphasizing that Petitioner suffered bilateral SIRVAs caused by two vaccine administered on the same day, Petitioner requests a pain and suffering award of $165,000.00, representing $85,000.00 for her more severe right SIRVA and $80,000.00 for her left SIRVA. Brief at 1, 11. She stresses the short amount of time between vaccination and her initial complaint of shoulder pain, the difficulties she experienced sleeping, moving her arm, and performing her nursing duties, the fact that she canceled planned surgery to remove a lipoma, and the need for multiple cortisone injections to treat her pain. *Id.* at 12-13. Petitioner maintains that the results of her right shoulder MRI – showing degenerative tearing – provides further evidence that her shoulder pain was severe. She also insists that she continued to suffer the residual effects of both SIRVAs as late as 2019. *Id.* at 13.

As general argument, Petitioner addresses the probative value of information contained in medical records – citing the rule articulated in *Murphy*, which she maintains is often overlooked, that information *contained* in medical records is more significant than what is *omitted*. Brief at 8-9 (citing *Murphy v. Sec'y of Health & Human Servs.* 23 Cl. Ct. 726, 773 (1991), *aff'd,* 968 F.2d 1226 (Fed. Cir. 1992), *cert. denied sub nom. Murphy v. Sullivan,* 113 S.Ct. 263 (1992)). Petitioner also criticizes any consideration of the amount of medical treatment sought as a factor to be weighed when determining the severity of Petitioner's injury. However, she agrees with and advocates for comparisons to other Program awards when determining the appropriate amount of damages. Brief at 9-10.

To support her requested award, Petitioner cites several decisions featuring lower awards - *Johnson, George,* and *T.E.*[10] - arguing that her SIRVAs were more severe. Brief

---

[10] *Johnson v. Sec'y of Health & Human Servs.*, No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (awarding $65,000.00 for actual pain and suffering); *George v. Sec'y of Health & Human Servs.*, No. 18-0426V, (Fed. Cl. Spec. Mstr. July 13, 2020) (awarding $67,000.00 for actual pain and suffering);

7

at 13-14. She maintains the level of her pain and limited ROM was greater than that suffered by the *Johnson* petitioner; that her treatment was more significant than that required for the *George* petitioner – three cortisone injections as opposed to one; and that the duration of her injury was less than that suffered by the *T.E.* petitioner. *Id.* (citing *Johnson,* 2021 WL 836891, at *2, 7; *George*, 2021 WL 4692451, at *2; *T.E.*, 2021 WL 2935751, at *3). Petitioner also argues that the MRI of her right shoulder showed evidence supporting a more severe SIRVA injury – degenerative tearing not seen on the *T.E.* petitioner's MRI. Brief at 14 (citing *T.E.*, 2021 WL 2935751, at *4). She maintains that *Dhanoa* provides "[t]he closest analog for evaluating each of the Petitioner's two shoulder injuries." Brief at 15 (citing *Dhanoa,* 2018 WL 1221922, at *7 (awarding $85,000.00 for actual pain and suffering and a one-year award of $10,000.00 for projected pain and suffering)).

Although Respondent agrees that Petitioner's "award is likely to be greater than a petitioner who experienced a SIRVA injury in only one shoulder" (Opp. at 9), he proposes the lesser sum of $117,500.00 for total pain and suffering. *Id.* at 2. He argues that Petitioner's SIRVAs were less severe – involving gaps in treatment, descriptions of multi-factorial pain, and significant relief from administered cortisone injections. *Id.* at 8-9. Stressing that Petitioner's injuries and treatment spanned the same period – which he estimates to be ten months, Respondent disagrees with Petitioner's proposal that the two shoulder injuries "must be assessed separately, and then combined for one damages award." *Id.* at 9.

Discussing awards in four other cases (*Rayborn, Knauss, Dagen,* and *Bossenbroek*)[11] (Opp. at 10-11), Respondent argues that "Petitioner's course is similar to that outlined in the *Rayborn* and *Dagen* cases" (id. at 11). He asserts that the treatment and duration of Petitioner's injury is comparable to that experienced by those petitioners, who received awards of $55,000.00 and $65,000.00, respectively. *Id.*

Addressing the Federal Circuit's holding in *Graves*, Respondent asserts that it is still proper to compare the severity of petitioners' pain and suffering in Program cases.

---

*T.E. v. Sec'y of Health & Human Servs.,* No. 19-0633V, 2021 WL 2935751 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $70,000.00 for actual pain and suffering).

[11] *Rayborn v. Sec'y of Health & Human Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for actual pain and suffering); *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for actual pain and suffering); *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering); *Bossenbroek v. Sec'y of Health & Human Servs.,* No. 17-0122V, 2020 WL 2510454 (Fed. Cl. Spec. Mstr. Apr. 3, 2020) (a non-SPU SIRVA cases in which $50,000.00 was awarded for actual pain and suffering and annual payments of $300.00 was awarded for projected pain and suffering).

Opp. at 7 n.8. However, he also argues "that such awards, in the aggregate, have trended too high." *Id.* at 9 n.10. Filed as an attachment to his damages brief, Respondent provides a list of 55 traditional tort system awards, noting that 75 percent of these awards are for $30,000.00 or less. *Id.* (citing Appendix A, ECF No. 63-1).

In her responsive brief, Petitioner addresses these arguments, insisting that, although not perfect, Program awards "form a workable, organically developed system of analysis by which parties in the Program should evaluate damages." Reply Brief at 7; *see also id.* at 4-7. She also criticizes Respondent's reliance on statements I made in my Ruling on Entitlement, noting that the parties had not yet briefed the issue of damages at that time. *Id.* at 3. Stressing again the unique nature of her bilateral SIRVA injuries, Petitioner maintains that the award she seeks, twice the median amount for all SIRVA claims, "is a wholly reasonable amount." *Id.* at 9.

### B. Analysis

The guidance provided by the *Graves* decision is clear (although not controlling),[12] and I have previously addressed the more general arguments about calculation of pain and suffering damages made by Respondent during expedited "Motions Day" hearings and in other damages decisions.

I also have not previously given great weight to Respondent's citation to pain and suffering determinations from traditional tort system state court cases, noting that Congress intended the "no-fault" system established in the Vaccine Program to be generous. H.R. REP. NO. 99-908, at 12-13 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353-54. Thus, Vaccine Program compensation will likely be greater than what is awarded in civil actions. Additionally, the descriptions of the traditional tort system cases proposed by Respondent often lack basic information needed for comparison. *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956, at *18 (Fed. Cl. Spec. Mstr. May 21, 2020). As a result, "SIRVA awards in the Vaccine Program are self-evidently more relevant and apposite." *Id.*

### 1.   Duration and Severity of SIRVA Injury[13]

A thorough review of the medical record reveals that Petitioner suffered moderate to severe SIRVA injuries in both shoulders following flu and Tdap vaccines administered in September 2016, obtained significant relief from cortisone injections administered in

---

[12] *See supra* Section II (for further discussion).

[13] A detailed factual history can be found in the Ruling on Entitlement issued on September 9, 2021. ECF No. 57.

9

both shoulder in early April 2017, experienced lower levels of returned pain in late May 2017, and gained more lasting relief following another set of injections administered in July 2017.[14] Petitioner did not return for further treatment until February 2019, and there is not sufficient evidence to show this later pain, reported only in the right shoulder, is related to the SIRVA injuries Petitioner suffered. In addition, this is not a case in which the petitioner required surgery.

During this ten-month period, Petitioner consistently reported that her right shoulder pain was more severe than her left.[15] She also described symptoms which appear unrelated to her SIRVA injuries, and her treating physicians indicated her overall condition was due to multiple factors. There is evidence showing Petitioner suffered from cervical radiculopathy and brachial venous occlusion prior to vaccination,[16] was reporting pain due to lipomas in her right arm and left knee at the time of vaccination,[17] and described pain and other symptoms more likely attributed to other conditions - such as osteoporosis, while experiencing her SIRVA injuries.[18]

Although the relief Petitioner experienced in early April 2017 was significant - an almost two-month reprieve followed by a return of mild pain and no limitation in ROM in

---

[14] There is some evidence that Petitioner may have received cortisone injections without charge from her primary care provider ("PCP") shortly after vaccination. Exhibit 8 at 11. However, sufficient documentation of these earlier injections has not been provided, and it appears they did not alleviate Petitioner's initial pain.

[15] At her first appointment with an orthopedist on April 5, 2017, Petitioner reported bilateral shoulder pain which was worse on her right side. Exhibit 4 at 6. An MRI of only her right shoulder was performed in early March 2017. *Id.* at 31.

[16] Prior to vaccination, Petitioner suffered prior conditions, including brachial venous occlusion, which caused pain down her arms and cervical radiculopathy. Exhibit 1 at 102. X-rays, taken in 2012, revealed degenerative disc disease. *Id.* at 61. Brachial venous occlusion is the blockage of blood flow through the veins in the upper arm. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 244, 1311, 2046 (32th ed. 2012).

[17] At the September 13, 2016 visit to her PCP when she received the flu and Tdap vaccinations alleged as causal, Petitioner sought a surgical referral for the removal of lipomas on her right arm and knee. Exhibit 1 at 62, 65. Indicating they had existed for approximately five years, she described the lipoma on her knee as increasing in size and the lipoma on her right arm as "hurting when working out." *Id.* at 62. A lipoma is "a benign, soft, rubbery, encapsulated tumor of adipose tissue, usually composed of mature fat cells." DORLAND'S at 1063.

[18] At her initial visit with her rheumatologist on February 1, 2017, between four to five months post-vaccination, Petitioner reported pain in her thumbs which radiated up her arms, pain in her wrists, and ten to fifteen minutes of stiffness in the mornings. Exhibit 3 at 7. The rheumatologist indicated that she suspected Petitioner's thumb and wrist pain was caused by underlying osteoarthritis, adding that she would evaluate that premise after reviewing x-rays of these areas. Regarding Petitioner's shoulder pain, Dr. Campbell opined that its etiology was "unclear." *Id.* At a later appointment on April 3, 2017, the rheumatologist prescribed PT for bilateral thigh/hip tightness Petitioner was experiencing. *Id.* at 12.

late May,[19] its effect is countered by the bilateral nature of Petitioner's SIRVAs. Whether resulting in the severe pain levels reported initially or mild to moderate pain experienced later, Petitioner's simultaneous SIRVA injuries undoubtedly posed considerable difficulties throughout this time. Thus, even considering the evidence of simultaneous unrelated pain, the pain and suffering attributable to her SIRVAs during this ten-month period should be considered substantial.

However, as I previously stated, the record does not support Petitioner's claim of continued pain related to her SIRVA injuries beyond July 2017. Ruling on Entitlement, issued Sept. 9, 2021, at 15-16. When Petitioner sought treatment again in early February 2019 - more than 19 months later and almost ten months after filing her claim, her orthopedist observed *full* range of motion, no tenderness, and symptoms which "[s]eems to have more clicking and popping in the shoulder than real pain." Exhibit 6 at 12. Her PT records show she complained of only right shoulder pain at that time (Exhibit 7 at 10) and identified a different location for her current pain than what she reported in 2016-17.[20] Although Petitioner correctly notes that the parties had not briefed the issue of damages at that time (Reply Brief at 3), she fails to acknowledge that she has provided no additional evidence to counter my earlier stated conclusion. Thus, I find the duration of Petitioner's bilateral SIRVAs to be approximately ten months.

### 2.     Comparison to Other Awards

I agree that the three cases first mentioned by Petitioner (*Johnson, George,* and *T.E.*) provide examples of less severe pain and suffering that that experienced by the Petitioner herein. However, I disagree with Petitioner's assertion that *Dhanoa* provides a comparable case for each of Petitioner's SIRVA injuries individually, with only a $5,000.00 reduction for her lesser left SIRVA injury. The *Dhanoa* petitioner suffered a SIRVA which resulted in severe pain and significantly limited ROM for a longer duration than the injuries suffered by Petitioner. *Dhanoa,* 2018 WL 1221922, at *3-5, Additionally, the *Dhanoa* petitioner did not experience unrelated conditions which would have contributed to the pain and suffering she endured. *Id.* at *3. Although the *Dhanoa* petitioner showed

---

[19] At a follow-up appointment with her orthopedist on May 24, 2017, Petitioner reported significant pain relief after the injections she received in early April. Exhibit 4 at 4. Although her pain had returned, again worse on the right side, she indicated that she still felt "about 40% better." *Id.* She acknowledged that her shoulder pain had worsened after she began working out and swimming. *Id.* Upon examination, Dr. Flanagan observed the same areas of tenderness previously seen on the right shoulder but not left, "full elevation and rotation in all planes, [and] [m]ild pain without weakness on resisted rotator cuff strength training bilaterally." *Id.* at 5.

[20] At her PT discharge on April 10, 2019, it was noted that Petitioner reported pain in her bicipital groove as she experienced in 2016-17, but when asked to identify the location of her pain, pointed to her glenohumeral joint and head of her humerus. Exhibit 7 at 55.

improvements after multiple injections and PT sessions, her progress was slow and steady, lacking the significant improvement shown by Petitioner in this case after her April and July 2017 injections. *Id.* at *4-5.

The *Dagen* and *Rayborn* cases cited by Respondent provide better comparisons, but the durations of the petitioners' SIRVAs in those cases were shorter. *Rayborn*, 2020 WL 5522948, at *11; *Dagen*, 2019 WL 7187335, at *10. Presumedly, Respondent offered an amount close to twice the awards in those cases to account for this difference, as well as the fact that Petitioner suffered two, virtually concurrent SIRVA injuries – at this time a relatively rare occurrence in the Vaccine Program.

As the parties acknowledged, given the bilateral SIRVA injuries suffered by Petitioner, it is difficult to find an appropriate comparison. Most of the non-surgical cases involving awards of more than $100,000 feature a SIRVA which continued for at least several years. *See, e.g., Fry v. Sec'y Health & Human Servs*., No. 18-1091V, 2020 WL 8457671 (Fed. Cl. Spec. Mstr. Dec. 16, 2020) (involving a duration of more than four years and an award of $120,000.00 for actual pain and suffering). However, I find the *Danielson* case to be informative when considering Petitioner's injury in its totality. That petitioner also suffered unrelated back and thoracic pain, but experienced a severe SIRVA and possible bone injury which improved slowly after multiple cortisone injections and seven months of PT. *Danielson v. Sec'y of Health & Human Servs.*, No. 18-1878V, 2020 WL 8271642, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 29, 2020) (awarding $110,000.00 for actual pain and suffering). Although the overall duration of the *Danielson* petitioner's injury was greater – more than two years - he did not experience the unique difficulties associated with Petitioner's dual injuries. *Id.*

Despite requiring surgery to resolve her injury, the petitioner in *Berge* also experienced events and circumstances similar to Petitioner's. *Berge v. Sec'y of Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *5-6 (Fed. Cl. Spec. Mstr. Aug. 17, 2021) (awarding $115,000.00 for actual pain and suffering). For example, she suffered severe pain but a less significantly limited ROM for approximately nine months prior to surgery. And the *Berge* petitioner was suffering significant back and knee pain at the time of her injury. *Berge,* 2021 WL 4144999*,* at *6. The fact that Petitioner suffered injuries in both shoulders is offset by the *Berge* petitioner's need for arthroscopic surgery.

If Petitioner had experienced only a right shoulder injury, I would award a pain and suffering amount slightly more than the $65,000.00 awarded in *Dagen,* 2019 WL 7187335, at *10. Given that Petitioner suffered bilateral SIRVA injuries, however - albeit milder in the left than right shoulder - I find the amount proposed by Respondent, which is slightly higher than what was awarded in *Danielson* and *Berge,* to be appropriate in this case.

12

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $117,500.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[21] I also find that Petitioner is entitled to $3,158.26 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $120,658.26 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[22]

**IT IS SO ORDERED.**

                                          **s/Brian H. Corcoran**
                                          Brian H. Corcoran
                                          Chief Special Master

---

[21] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[22] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.